WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Randall,<br><br>            Plaintiff,<br><br>v.<br><br>United Parcel Service Incorporated, et al.,<br><br>            Defendants. | No. CV-22-01971-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant United Parcel Service, Inc.'s ("UPS") Rule 12(b)(6) Motion to Dismiss (Doc. 10). For the foregoing reasons, the motion is granted in part and denied in part.

**BACKGROUND**

On July 6, 2020, Plaintiff was assaulted by her coworker Ryan Mortensen while on the job. (Doc. 1 at 3.) On the same day, Plaintiff reported the sexual assault to her manager, who, after sending Plaintiff on an additional pick-up without offering medical assistance or time-off, reported it to security. (*Id.* at 4.) Plaintiff was thereafter sent home. (*Id.*) Mortensen resigned from UPS on that same day. (*Id.*) The next day, Plaintiff filed a police report about the assault with the Mesa Police Department. (*Id.*) Thereafter, Defendant placed Plaintiff's work truck near Mr. Mortenson's brother-in-law who also worked at UPS, and required her to help him on his pick-up routes. (*Id.* at 6.) Ms. Randall reported

to her supervisor that this assignment made her feel uncomfortable. (*Id.*)

Plaintiff alleges that UPS has failed to keep confidential the information that was reported to management by Ms. Randall. On July 17, 2020, a UPS safety supervisor informed Plaintiff that he and several employees received an email about the sexual assault involving Plaintiff and Mortensen. (*Id.* at 4.) On September 7, 2020, Plaintiff's supervisor announced during a workgroup meeting that Plaintiff was being assigned a different route because Mortensen was rehired by another package carrier. (*Id.*) Since the assault, Plaintiff has endured and continues to endure harassing and discriminatory comments about Mortenson's sexual assault from other employees and her supervisors. She has further been subject to sexual innuendo and harassing jokes. *See* (*Id.* at 6.)

Less than three weeks after the Mortenson assault, on July 24, 2020, Peter Reis, another co-employee sexually assaulted Plaintiff at his mother's house. (*Id.*) About one year later, without Plaintiff's consent, Reis grabbed Plaintiff and kissed her while at work. (*Id.*) Reis also blocked Plaintiff twice, left notes and a check on her car, and intimidated her. (*Id.* at 7.) "From about August 2021 until November 2021, [Plaintiff] received approximately 80 plus messages and emails from [] Reis which were threatening in nature." (*Id.* at 6.) Plaintiff did not report these events to Defendant until October 29, 2021. (*Id.* at 7.)

In November, Defendant held a "disciplinary meeting" with Reis and issued a "warning letter to him." (*Id.* at 16; Doc. 10 at 9.) The same month, November 2021, Plaintiff served Reis with an order of protection while he was at work. (Doc. 1 at 7.) On December 24, 2021, Reis was arrested for violating the order of protection. (*Id.*) The order of protection was modified to include Plaintiff's work address on January 20, 2022. (*Id.*) From December 2021 to January 2022 UPS informed Plaintiff's union representative that Defendant wished to transfer Plaintiff to a "less desirable workplace hub because she was interrupting production and being an inconvenience at work." (*Id.* at 7–8.) But UPS eventually chose to transfer Reis to another work hub in March 2022. (*Id.* at 8.) In April 2022, Plaintiff learned that "UPS management was telling employees at the Tempe hub

that there was a female employee at the Mesa hub getting men in trouble by claiming sexual harassment." (*Id.*)

Plaintiff's action against UPS alleges (1) sexual harassment, harassment, and hostile work environment under Title VII of the Civil Rights Act of 1964; (2) retaliation under Title VII and the Arizona Civil Rights Act ("ACRA"); (3) intentional infliction of emotional distress; and (4) negligent supervision and retention. (Doc. 1.) Defendant moves to dismiss all four claims. (Doc. 10.)

## DISCUSSION

### I. Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), so that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Id.* When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Buckey v. Cnty. of L.A.*, 968 F.2d 791, 794 (9th Cir. 1992). Legal conclusions couched as factual allegations, however, are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

### II. Sexual Harassment, Harassment, and Hostile Work Environment

#### A. Legal Standard

Under Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Terms, conditions, or privileges of employment" include a person's work environment.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). And sexual harassment is sex discrimination. *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001). "By tolerating sexual harassment against its employees, the employer is deemed to have adversely changed the terms of their employment in violation of Title VII." *Id.* To establish that a hostile work environment exists, a plaintiff must show conduct "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Courts look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23

### B. Analysis

First, immediately after Plaintiff was assaulted by Mortenson, Plaintiff reported the assault to her manager. (Doc. 1 at 4.) Plaintiff alleges that her employer did not take appropriate action upon learning of the assault, provided her with no relief, and placed Plaintiff's work truck next to Mortensen's brother-in-law and "sent her to help [] Mortensen's brother-in-law on his pick-up routes." (*Id.* at 6.) Plaintiff "reported how uncomfortable she was in that situation to [her] manager." (*Id.*)

Second, Plaintiff alleges that, after she reported that Reis was harassing her at work, and she obtained an order of protection, she was informed that UPS would make no effort to enforce the order at the workplace. (*Id.* at 7.) She alleges she was subject to repeated harassment from Reis thereafter and that UPS management disclaimed knowledge of such harassment although UPS management was aware of the harassment as it was occurring. (*Id.* at 8.)

Third, Plaintiff claims that UPS humiliated her and continues to humiliate her because the "sexual assault was . . . disclosed to and discussed by employees throughout the workplace." (*Id.* at 5.) Moreover, she is subject to "endless harassing and discriminatory comments and questions" about the sexual assault from UPS employees and

management. (*Id.* at 9.) Further, for example, Defendant's manager told "employees at the Tempe hub that there was a female employee at the Mesa hub getting men in trouble by claiming sexual harassment." (*Id.* at 8.)

Finally, Plaintiff alleges that UPS has in any event, a "locker room" type culture in "which it has become acceptable to make sexual innuendo and harassing jokes to female employees including towards Ms. Randall." (*Id.* at 6.) Given the facts alleged, a reasonable person could find Plaintiff's employer, management, and co-workers' conduct was hostile or abusive. *See Harris*, 510 U.S. at 21–22 ("Conduct that is not severe or pervasive enough to create an *objectively hostile or abusive* work environment . . . is beyond Title VII's purview.")

Thus, in the aggregate, these factual allegations are sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.[1]

### C. Time Barred

Under Title VII of the Civil Rights Act of 1964, a plaintiff must first file "an

---

[1] To the extent Plaintiff is alleging that UPS is liable for Mortensen's assault, Plaintiff must amend her complaint. Plaintiff's conclusory allegation that UPS was aware or should have been aware of prior workplace assaults committed by Mortenson, does not provide sufficient facts to conclude that UPS either discriminated against or harassed Plaintiff by its mere continued employment of him. Plaintiff does not state that the individuals involved in those incidents reported the sexual assault to UPS; nor does Plaintiff allege that Mortensen's mere presence created a hostile work environment. *Cf. Bowles v. Romulus Inc.*, No. CV-15-00077-PHX-DGC, 2016 WL 233153, at *3 (D. Ariz. Jan. 20, 2016) ("It is undisputed that [plaintiff-employee] never complained to [defendant-employer] about feeling ostracized or threatened by his Hispanic coworkers. And there is no evidence that [defendant-employer] was aware of . . . prior racist remarks. Because [plaintiff-employee] has not produced any evidence that [defendant-employer] knew or should have known about hostile conduct other than the January 4th incident, [defendant-employer] cannot be held liable for this conduct.") (internal citation omitted); *Grissom v. Freeport-McMoran Morenci Inc.*, No. CV-09-00728-PHX-DGC, 2010 WL 3489099, at *5 (D. Ariz. Aug. 31, 2010) (finding that evidence of an employee "complain[ing] regularly" to a supervisor and "complain[ing] to human resources multiple times, to several problem solving coordinators, and others" "creates a question of material fact as to whether [the employer] knew or should have known of the alleged harassment"); *Ellison v. Brady*, 924 F.2d 872, 883 (9th Cir. 1991) ("We believe that in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment," but on remand, the district court should determine how often co-employees would have had to interact and the employer's reasoning to return the harassing employee.). Plaintiff also does not state what "sexual assault and harassment protocols, prevention or response plans," (Doc. 1 at 5), Defendant failed to enforce or maintain. Moreover, it is unclear how rehiring a former supervisor is relevant to UPS's liability for the Mortenson assault if that supervisor was not supervising Mortenson.

employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC") either 180 or 300 days after an 'alleged unlawful employment practice occurred.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 101 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)).  Within 90 days after the EEOC issues a right to sue letter, the applicant must file an action in federal district court.  42 U.S.C. § 2000e-16(c).  Similarly, under ACRA, A.R.S. §§ 41-1401 to 1493.02, an applicant must file a charge within 180 "days after the alleged unlawful employment practice occurred."  A.R.S. § 41-1481(A). Then, a lawsuit must be filed in court no later than one year after the employment discrimination charge was filed.  A.R.S. § 41-1481(D); (Doc. 1 at 19).

Here, Plaintiff filed charges with the EEOC and the State of Arizona Attorney General's Office on March 24, 2022, against Defendant alleging sexual harassment and discriminatory treatment based on sex.  (*Id.* at 2.)  She received a right to sue letter from Arizona's AG's Office and the EEOC on July 1, 2022, and August 23, 2022, respectively. (*Id.* at 3, 18–19.)  Plaintiff initiated her lawsuit on November 18, 2022.  (*Id.* at 13.) Plaintiff, however, asserts that "she continued to experience a hostile work environment at the time of filing the charge." (Doc. 21 at 4.)  This Court must determine whether any acts that occurred after July 2020 "are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."  *See Nat'l R.R. Passenger Corp*, 536 U.S. at 120.  The hostile environment claims asserted here involve repeated conduct.  *Id.* at 115.  "Such claims are based on the cumulative effect of individual acts" and can occur over a series of days or years.  *Id.*

Accepting Plaintiff's allegations as true, as the Court must for the purpose of this motion, Plaintiff alleges that she has been continually humiliated, ridiculed, or intimated by Defendant's employees, including management, who kept discussing the sexual assault that occurred by Mortensen well after July 2020, which interfered with Plaintiff's work performance.  *See Harris*, 510 U.S. at 21 ("When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment,' Title VII is violated.") (quoting *Meritor Sav. Bank, FSB*, 477 U.S. at 65, 67) (internal citations omitted). She further pleads that Defendant violated Title VII by failing to take appropriate corrective action in response to the sexual assault. (Doc. 1 at 10.) "A charge alleging a hostile work environment claim [] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp*, 536 U.S. at 122; *see Swenson*, 271 F.3d at 1191 (concluding that the discriminatory act was the adequacy of the employer's response, thus plaintiff's statutory period did not start to run until the employer took final action on the employee's complaint). Accordingly, Plaintiff's charge of discrimination for her Title VII claim is not time barred.

**III. Retaliation**

    **A. Legal Standard**

To make out a prima facie case of retaliation under Title VII, "an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (internal citations omitted). ACRA claims are examined under the same test. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) ("The Arizona Civil Rights Act is 'generally identical' to Title VII, and therefore 'federal Title VII case law [is] persuasive in the interpretation of [the Arizona] Civil Rights Act.'") (quoting *Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 165, 673 P.2d 907, 910, n. 3 (1983)) (alterations in original).

    **B. Analysis**

Plaintiff's reports about Reis's conduct towards her satisfies the first element of a retaliation claim under Title VII and ACRA. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("Asserting one's civil rights . . . is a protected activity under Title VII . . . .").

Second, in the Ninth Circuit, proof of an adverse employment action is satisfied where "a plaintiff [] show that a reasonable employee would have found the challenged

action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Sillars v. Nevada*, 385 F. App'x 669, 671 (9th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Namely, a Title VII retaliation claim need not be supported by an adverse action that materially altered the terms or conditions of the plaintiff's employment." *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018).

Employment decisions that can constitute a materially adverse action include among other things lateral transfers. *Ray*, 217 F.3d at 1240–44. Here, Plaintiff alleges that Defendant's attempt to "transfer her to a less desirable workplace hub in another city" "on multiple occasions" is an adverse action. (Doc. 1 at 10–11.) She further alleges that Defendant threatened to transfer Plaintiff at least three times from December 2021 to January 2022 for interrupting production and being an inconvenience at work. (*Id.* at 7–8.) The threats were communicated directly to Plaintiff and through Plaintiff's union representatives. (*Id.* at 7–8.)

The Ninth Circuit has found that lateral transfers and transfers of job duties are adverse employment actions. *See e.g.*, *St. John v. Emp. Dev. Dep't*, 642 F.2d 273, 274 (9th Cir. 1981) (lateral transfer); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (transfer of job duties). In *St. John*, the Ninth Circuit upheld a finding that a lateral transfer (same pay and status) is an adverse employment action when a complaint with the EEOC is the sole cause of the transfer. 642 F.2d at 274. Likewise, in *Yartzoff*, the Ninth Circuit concluded that the transfer of various job duties would constitute an adverse employment decision cognizable under Title VII. 809 F.2d at 1375–76. In *Peck v. City of Tucson*, however, the Ninth Circuit declined to find an adverse action where the employee "did not submit any evidence showing any details of the transfer (or that such a transfer actually occurred)." No. 21-15198, 2021 WL 5984971, at *2 (9th Cir. Dec. 16, 2021). Here, however, Plaintiff's description is not conclusory, it is the description given to her on three different occasions: twice by her union representatives and once from UPS management.

(Doc. 1 at 7–8.) Plaintiff's belief that the transfer would be less desirable is also supported by the allegation that a manager at her current workplace "called management at the Tempe hub to inform them of [Plaintiff] being a problem at work." (*Id.* at 8.) Thus, threatening to transfer an employee on multiple occasions directly or through their union representative to a less desirable workplace "is reasonably likely to deter [the] employee[] from engaging in protected activity." *See Ray*, 217 F.3d at 1243.

Third, there is a causal link between the protected activity and the adverse action. "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1376. In this case, Defendant was aware of the Title VII complaints, police reports, orders of protection, arrests, and corporate ethic complaints filed by Plaintiff. (Doc. 1 at 4, 7–9.) Shortly after Plaintiff reported Reis for sexual harassment on October 29, 2021, she was told three times between December 2021 and January 2022 that Defendant "wanted to transfer her to a different, less desirable workplace hub because she was interrupting production and being an inconvenience at work." (*Id.* at 7–8.) Accordingly, Plaintiff has sufficiently alleged a prima facie case of retaliation under Title VII and ACRA.

**IV.   Intentional Infliction of Emotional Distress (Count III) and Negligent Supervision and Retention (Count IV)**

Plaintiff "does not object to the dismissal of claims three . . . and four . . . ." (Doc. 21 at 9–10.) The Court therefore dismisses Plaintiff's intentional inflection of emotional distress and negligent supervision and retention claims.

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. 10) is **granted in part and denied in part**. The Court grants Defendant's Motion regarding Counts III and IV, which were voluntarily dismissed by Plaintiff. The Court denies Defendant's Motion concerning Counts I and II.

Dated this 11th day of March, 2024.

G. Murray Snow
Chief United States District Judge